Kevin M. Sutehall (9437)
Mark J. Connot (10010)
**FOX ROTHSCHILD LLP**
One Summerlin
1980 Festival Plaza Drive, Suite 700
Las Vegas, NV 89135
Tel.: (702) 262-6899
Fax: (702) 597-5503
ksutehall@foxrothschild.com
mconnot@foxrothschild.com
*Attorneys for Plaintiff Strike 3 Holdings, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC,<br><br>            Plaintiff,<br><br>vs.<br><br>JOHN DOE subscriber assigned IP address 70.189.203.216 ,<br><br>            Defendant. | Case Number: 2:18-cv-01541-KJD-NJK<br><br>**RENEWED EX PARTE MOTION FOR LEAVE TO SERVE A THIRD PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE** |

Pursuant to the Federal Rules Civil Procedure 26(d)(1), Strike 3 Holdings, LLC ("Strike 3" or "Plaintiff") respectfully moves for entry of an order granting it leave to serve a third party subpoena on Cox Communications prior to a Rule 26(f) conference (the "Motion"). The Motion is based on the foregoing Memorandum of Points and Authorities and is supported by the declarations of Greg Lansky ("Lansky Declaration"), Tobias Fieser ("Fieser Declaration"), John S. Pasquale ("Pasquale Declaration"), and Susan B. Stalzer ("Stalzer Declaration"), all of which are filed concurrently herewith. A proposed order is also submitted concurrently herewith for the Court's convenience in compliance with LR IA6-2.

Dated this 2nd of October, 2018.                     **FOX ROTHSCHILD LLP**

By: /s/ *Kevin M. Sutehall*
Kevin M. Sutehall (9437)
Mark J. Connot (10010)

*Attorney for Plaintiff Strike 3 Holdings, LLC*

1

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RENEWED EX PARTE MOTION FOR LEAVE TO SERVE A THIRD PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE**

Pursuant to Fed. R. Civ. P. 26(d)(1), Plaintiff hereby respectfully submits this Memorandum of Points and Authorities in support of its Motion for Leave to serve a third-party subpoena prior to a Rule 26(f) conference.

## I. INTRODUCTION

Plaintiff is the owner of original, award winning motion pictures featured on its brand's subscription-based adult websites.[1] Unfortunately, Strike 3's success has led users on the Internet to illegally infringe its works on a very large scale. Indeed, Strike 3's motion pictures are among the most infringed content in the world. *See* Lansky Declaration.

Strike 3 hired an investigator, IPP International U.G., to monitor and detect the infringement of Strike 3's content. IPP discovered that Defendant's IP address was illegally distributing several of Strike 3's motion pictures. Strike 3's independent forensic expert, John S. Pasquale reviewed the evidence captured by IPP and confirmed that Defendant's IP address was involved in an infringing transaction at the exact date and time reported by IPP. *See generally* Pasquale Declaration. Strike 3 only knows Defendant by his or her IP address. This IP address is assigned to Defendant by his or her Internet Service Provider ("ISP"), which is the only party with the information necessary to identify Defendant by correlating the IP address with John Doe's identity. As a result, Plaintiff now seeks leave to serve limited, immediate discovery on Defendant's ISP, Cox Communications, Inc. (Cox Communications) so that Plaintiff may learn Defendant's identity, investigate Defendant's role in the infringement, and effectuate service. Further impelling expediency, Defendant's ISP only maintains the internal logs of the requested information for a brief period of time.[2]

---

[1] *See* Lansky Declaration.
[2] *See, e.g.*, Statement Of Jason Weinstein Deputy Assistant Attorney General Criminal Division Before The Committee On Judiciary Subcommittee On Crime, Terrorism, And Homeland Security United States House Of Representatives, (January 2011) at http://www.justice.gov/sites/default/files/testimonies/witnesses/attachments/01/25/11//01-25-11-crm-weinstein-testimony-re-data-retention-as-a-tool-for-investigating-internet-child-pornography-and-other-internet-crimes.pdf, stating: "Some [ISP] records are kept for weeks or months; others are stored very briefly before being purged."

1

Plaintiff seeks leave of Court to serve a Rule 45 subpoena on Defendant's ISP. This subpoena will only demand the true name and address of Defendant. Plaintiff will only use this information to prosecute the claims made in its Complaint. Without this information, Plaintiff cannot serve Defendant nor pursue this lawsuit and protect its copyrights.

## II.     FACTS

### A.  Plaintiff Is Plagued By Rampant Copyright Infringement

Greg Lansky ("Mr. Lansky") is a member of General Media Systems, LLC, ("GMS"), the parent company that owns Strike 3. *See* Lansky Declaration, at ¶ 1. Strike 3 owns the intellectual property to the *Blacked*, *Blacked Raw*, *Tushy*, and *Vixen* adult brands, including the copyrights to each of the motion pictures distributed through the brands' sites and the trademarks to each of the brand names and logos. *Id*. at ¶ 3. Strike 3 is owned entirely by Mr. Lansky's company, GMS, and has existed since 2015. *Id*.

Mr. Lansky is the Chief Creative Officer of the *Blacked*, *Blacked Raw*, *Tushy*, and *Vixen* adult brands. *Id*. at ¶ 1. In 2006, Mr. Lansky moved to the United States from Paris to pursue his dream of creating art in an adult context. *Id*. at ¶ 4. He has always been passionate about photography and cinematography. *Id*.

It was a difficult start – Mr. Lansky could barely speak English, and he had trouble making connections and finding employment. *Id*. at ¶ 5. Eventually, after tremendous hard work, Mr. Lansky was fortunate to be hired by some of the biggest adult brands in the world. *Id*. at ¶ 6. Through these experiences, Mr. Lansky was able to establish himself and become an expert in the field. *Id*.

In 2013, Mr. Lansky decided to risk everything to create his own company and studio. *Id*. at ¶ 7. After a few years, his brands turned into a multi-million dollar a year business. *Id*. at ¶ 10. His philosophy is to pay artists and models an amount above that being paid by other companies, focusing on delivering superior quality adult films. *Id*. at ¶¶ 12–13. Moreover, Strike 3's motion pictures are known for having the highest production budget of any in the industry. *Id*. at ¶ 15.

2

Renewed Memorandum of Points and Authorities in Support of Plaintiff's Ex Parte Motion for Leave to Serve A Third Party Subpoena Prior to A Rule 26(f) Conference

Because of this, Strike 3's brand's websites have a subscriber base that is one of the highest of any adult sites in the world, with 20 million unique visitors to its websites per month, these websites enjoy a loyal following. *Id*. at ¶ 10. Strike 3 is also currently the number one seller of adult DVDs in the United States. *Id*. at ¶ 17. Finally, Strike 3's content is licensed throughout the world, including by most major cable networks. *Id*. at ¶ 18. This success has led to numerous awards being bestowed upon Strike 3, such as "adult site of the year," "best marketing campaign – company image," and "best cinematography." *Id*. at ¶ 19. Mr. Lansky himself has also won "director of the year" three years in a row. *Id*.

Unfortunately, piracy is a major threat and causes tremendous damage to Strike 3. As Mr. Lansky succinctly puts it, Strike 3 "can compete in the industry, but we cannot compete when our content is stolen." *Id*. at ¶ 22. To continue to provide value for members, exciting and inspiring projects for adult performers, and to continue to create top paying jobs and growth in the adult community, Strike 3 must protect its copyrights. *Id*. at ¶ 29.

### B. Plaintiff Brings Its Litigation in Good Faith

Strike 3 is mindful of the nature of the litigation and its goal is to not embarrass anyone or force anyone to settle unwillingly, especially anyone that is innocent. *Id*. at ¶ 28. Therefore, Strike 3 only files strong cases against extreme infringers. *Id*. at ¶ 29. Indeed, each lawsuit is brought against infringers that not only engage in illegal downloading, but are also large scale unauthorized distributors of Strike 3's content. *Id*. All defendants within the Strike 3 litigation have distributed, at a minimum, at least 15% of Strike 3's entire copyrighted library. *Id*. Strike 3 does not seek settlements unless initiated by defendant or defendant's counsel. *Id*. at ¶ 30. Moreover, Strike 3 does not send demand letters nor make any attempt to contact a defendant prior to service of the Complaint. *Id*. Strike 3 is careful to only proceed to litigation with strong cases, when it has a good faith basis for doing so. *Id*. at ¶ 31.

Strike 3 is a successful adult entertainment company that makes nearly all of its revenue from sales of subscriptions, DVDs, and licenses. *Id*. at ¶ 32. This litigation, or any litigation instituted by Strike 3, is not a business model. *Id*. Instead, Strike 3's goal is to deter piracy and

3

Renewed Memorandum of Points and Authorities in Support of Plaintiff's Ex Parte Motion for Leave to Serve A Third Party Subpoena Prior to A Rule 26(f) Conference

redirect the infringement back into legitimate sales. *Id*. Proceeds that Strike 3 receives from settlements go back into making the company whole, including investing in better pay for artists and performers, better quality productions, and hiring and providing benefits for employees. *Id*.

## III. ARGUMENT

### A. Legal Standard Governing Expedited Discovery Requests To Identify An Anonymous Defendant

"[T]his is precisely the type of case for which expedited jurisdictional discovery is often appropriate, because plaintiff is ignorant of . . . the identity" of Doe Defendant. *808 Holdings LLC v. Collective of Jan. 3, 2012 Sharing Hash*, No. CV 12-2251-CAS (EX), 2012 WL 13012725, at *5 (C.D. Cal. Oct. 1, 2012). "[Fed. R. Civ. P. 26(d)] provides that parties may depart from the meet and confer requirements of Rule 26(f) with the Court's authorization." *Voltage Pictures, LLC v. Unknown Party*, No. CV-13-728-PHX-SMM, 2013 WL 12174691, at *1 (D. Ariz. July 15, 2013). "The Ninth Circuit has held that when the defendants' identities are unknown at the time the complaint is filed, courts may grant plaintiffs leave to take early discovery to determine the defendants' identities unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *QOTD Film Inv. Ltd. v. Does 1-30*, No. CV 2:16-00928-APG-GWF, 2016 WL 8735619, at *2 (D. Nev. May 6, 2016) (referencing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)). "To determine whether to grant a request for early discovery, the court shall apply the conventional 'good cause' standard that weighs the need for discovery to further justice against the prejudice to the opposing party." *Id.* (citing *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275–76 (N.D. Cal. 2002).

"Courts in this district apply a three-factor test when considering motions for early discovery to locate certain defendants." *Id.* (citing *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273 (N.D. Cal. 2002)). These include:

> (1) whether the plaintiff has identified the unknown party with such specificity that the court can determine that the defendant is a real person or entity who may be sued in federal court; (2) whether the plaintiff has made a good faith effort to

4

identify the unknown defendant and identified all previous steps taken to do so; and (3) whether the plaintiff's suit could withstand a motion to dismiss. *Voltage Pictures*, No. CV-13-728-PHX-SMM, 2013 WL 12174691 at *1 (citing *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573 (N.D. Cal. 1999)). "Typically, District Courts within the Ninth Circuit have found good cause supporting a request for early or expedited discovery in copyright infringement cases where the plaintiff alleges that its copyrighted work has been infringed upon through a peer-to-peer file sharing system, and sought early discovery to obtain the identities and addresses of the alleged infringers through their respective ISPs." *QOTD Film*, No. CV 2:16-00928-APG-GWF, 2016 WL 8735619 at *2 (collecting cases).

### B. There Is Good Cause for this Court to Grant Plaintiff's Application for Leave to Serve Its Subpoena

#### 1. *Plaintiff Identifies Doe Defendant with Sufficient Specificity*

When evaluating an application for leave to take early discovery "the Court examines whether the plaintiff has identified the defendants with sufficient specificity, demonstrating that each defendant is a real person or entity who would be subject to the Court's jurisdiction." *Distinct Media Ltd. v. Doe Defendants 1-50*, No. CV 15-03312 NC, 2015 WL 13389609, at *2 (N.D. Cal. Sept. 29, 2015) (citation omitted). This factor implies two inquiries: whether the infringement can be traced back to an actual person and whether this Court has personal jurisdiction over that individual.

##### a. *Plaintiff has Sufficiently Demonstrated that the Infringement Conducted Using the Relevant IP Address was Committed by an Actual Person*

"A plaintiff may show that a defendant is a real person or entity by providing evidence of 'specific acts of misconduct that could only have been perpetrated by actual people, as opposed to a mechanical process.'" *Id.* (quoting *G.N. Iheaku & Co. Ltd. v. Does 1-3*, No. CV 14-02069 LB, 2014 WL 2759075, at *2 (N.D. Cal. June 17, 2014)). Although the BitTorrent protocol contains some default and automatic functions, none of these operations can take place

5

without human interaction. That is, but for the Doe Defendant directing his or her BitTorrent client to download the torrent file, the alleged infringement would not have occurred.

        b. *Plaintiff Traced Doe Defendant's IP Address to this Court's Geographic Jurisdiction Using Geolocation Technology*

"[A] plaintiff identifies Doe defendants with sufficient specificity by providing the unique IP addresses assigned to an individual defendant on the day of the allegedly infringing conduct, and by using 'geolocation technology' to trace the IP address to a physical point of origin." *QOTD Film*, No. CV 2:16-00928-APG-GWF, 2016 WL 8735619 at *2 (quoting *808 Holdings, LLC v. Collective of Dec. 29, 2011 Sharing Hash*, 2012 WL 1648838, at *4 (S.D. Cal. May 4, 2012)). Here, Plaintiff used Maxmind, a geolocation technology, to trace Defendant's IP address to a geographic area within this Court's in personal jurisdiction.  This establishes "a prima facie showing of personal jurisdiction over defendant." *AF Holdings LLC v. Doe*, No. CV 12-04447 RMW, 2012 WL 12973140, at *2 (N.D. Cal. Nov. 6, 2012); *see also Braun v. Doe*, No. CV 12-3690 YGR (JSC), 2012 WL 3627640, at *2 (N.D. Cal. Aug. 21, 2012) (noting that "[p]ublicly available software provides basic, or at least presumptive, geographic information about IP addresses")) (citation omitted).

Other courts in this Circuit have accepted Maxmind's findings for the purpose of allowing expedited discovery.  *See e.g.*, *Strike 3 Holdings*, No. CV 17-2317-JAH (BLM), 2017 WL 6389848, at *2; *Cell Film Holdings, LLC v. Doe*, No. CV 16-2584-BEN (BLM), 2016 WL 6523432, at *2 n.2 (S.D. Cal. Nov. 3, 2016), *Criminal Prods., Inc. v. Doe*, No. CV 16-2589 WQH (JLB), 2016 WL 6822186, at *3 (S.D. Cal. Nov. 18, 2016) ("The Court concludes that based on the timing of the IP address tracing efforts employed by Plaintiff's investigator, the documented success of the Maxmind geolocation service, and Plaintiff's counsel's efforts to independently verify the location information provided by Plaintiff's investigator, Plaintiff has met its evidentiary burden [that jurisdiction is proper].").  Indeed, federal law enforcement relies on Maxmind for its cyber investigations.  *See e.g., United States v. Tillotson*, No. CR 2:08-33, 2008 WL 5140773, at *6 (E.D. Tenn. Dec. 2, 2008) (Department of Justice); *United States v.*

6

*Richardson*, No. CR 4:11-3116, 2012 WL 10382 at *2 (D. Neb. Jan. 3, 2012), *report and recommendation adopted*, No. CR 4:11-3116, 2012 WL 395509 (D. Neb. Feb. 7, 2012) (Federal Bureau of Investigation); *see also* Complaint at ¶ 9.  Thus "Plaintiff has sufficiently identified the unknown Defendant[] through their individual IP address[] such that the Court can conclude that they are in fact real persons or entities, and because Plaintiff's Complaint alleges claims for federal copyright infringement, these parties may be sued in federal court. *Voltage Pictures*, No. CV 13-728-PHX-SMM, 2013 WL 12174691 at *2.

    c. *Plaintiff Has Identified All Previous Steps Taken to Locate the Unknown Doe Defendant*

  "Next, Plaintiff must identify all previous steps taken to identify the Doe Defendant in a good faith effort to locate and serve it."  *Malibu Media, LLC v. Doe*, No. CV 16-1916-GPC (JMA), 2016 WL 6216183 at *2 (S.D. Cal. Oct. 25, 2016) (citing *Columbia Ins. Co.*, 185 F.R.D. at 579).  Here, Plaintiff has diligently attempted to correlate Defendant's IP address to Defendant by searching for Defendant's IP address on various web search tools, including basic search engines like http://www.google.com.  Plaintiff has further conducted its own diligent research on its ability to identify Defendant by other means by reviewing numerous sources of authority, most of which have been discussed above (*e.g.*, legislative reports, agency websites, informational technology guides, governing case law, etc.).  Plaintiff has also discussed the issue at length with computer investigators and cyber security consultants.  Plaintiff has been unable to identify any other way to go about obtaining the identities of its infringers and does not know how else it could possibly enforce its copyrights from illegal piracy over the Internet.  "This is the case because although publicly available data allowed Plaintiff to identify the specific ISP used by Defendant as well as the city associated with the IP address, it did not permit Plaintiff to ascertain the identity of the subscriber or actual defendant. Accordingly, Plaintiff appears to have investigated and obtained the data pertaining to the alleged infringement in a good faith effort to locate Defendant." *Cobbler Nevada, LLC v. Doe-*

7

*68.8.213.203*, No. CV 15-2729-GPC (JMA), 2015 WL 9026554, at *2 (S.D. Cal. Dec. 15, 2015).

### 2. *Plaintiff's Complaint Withstands a Motion to Dismiss*

Finally, Plaintiff's Complaint withstands a motion to dismiss. This factor acts as a gatekeeper designed to "prevent abuse of this extraordinary application of the discovery process and to ensure that plaintiff has standing to pursue an action against defendant." *Columbia Ins. Co.*, 185 F.R.D. at 579–80 (citation omitted).

As this is an action for copyright infringement, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (jurisdiction over copyright actions). *See* Complaint at ¶ 7; *see also Strike 3 Holdings, LLC v. Doe*, No. CV 3:17-02316-GPC (KSC), 2018 WL 324264, at *3 (S.D. Cal. Jan. 5, 2018) (finding in a analogous matter that "the Complaint correctly alleges subject matter jurisdiction pursuant to Title 28"). This Court also has personal jurisdiction over Doe Defendant because the Defendant's infringement took place within the geographic scope of this Court's jurisdiction, *supra* Section B.1.b., and Defendant also likely resides within this District or at least has substantial contacts with this District. *See* Complaint ¶¶ 8–9. Venue is appropriate pursuant to 28 U.S.C. § 1391(b) and (c) as well as 28 U.S.C. § 1400(a) (venue for copyright cases). *See* Complaint ¶ 10; *see also Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1126 (9th Cir. 2010) ("This circuit interprets [28 U.S.C. § 1400(a)] to allow venue in any judicial district where, if treated as a separate state, the defendant would be subject to personal jurisdiction").

Finally, "[t]o survive a motion to dismiss [for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiff's Complaint would survive such a motion.

To make a prima facie claim for copyright infringement, Plaintiff must show (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are

8

original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). "In addition, direct infringement requires the plaintiff to show causation (also referred to as 'volitional conduct') by the defendant." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017) (citing *Fox Broad. Co., Inc. v. Dish Network L.L.C.*, 747 F.3d 1060, 1067 (9th Cir. 2013)). Plaintiff's Complaint accomplishes this, stating: (1) "Plaintiff is the owner of the Works, which [are] an original work of authorship"; (2) "[d]efendant copied and distributed the constituent elements of Plaintiff's Works using the BitTorrent protocol"; and (3) "[a]t no point in time did Plaintiff authorize, permit or consent to Defendant's distribution of its Works, expressly or otherwise." *See* Complaint at ¶¶ 35–37.

Plaintiff owns a valid copyright in the Works, which are registered with the United States Copyright Office or have complete applications pending. *See* Complaint at ¶¶ 31–33; *see also* 17 U.S.C. § 410(c); *Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*, 606 F.3d 612 (9th Cir. 2010). Plaintiff's prima facie allegations of infringement are attested to by Plaintiff's investigator, IPP International U.G.'s employee, Tobias Fieser. *See* Fieser Declaration. Finally, each digital file has been verified to be a copy of one of Plaintiff's copyrighted works. *See* Stalzer Declaration.

Plaintiff has also made a plausible prima facie showing of "copying." "'The word 'copying' is shorthand for the infringing of any of the copyright owner's five exclusive rights' described in § 106." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). Plaintiff's Complaint alleges that Doe Defendant not only downloaded Plaintiff's works over the BitTorrent network, *see* 17 U.S.C. § 106(1), but also distributed these files to the BitTorrent swarm. *See id.* § 106(3); *see also* Complaint at ¶ 38. Additionally, by downloading the torrent files, Defendant triggered a cascade of technical operations, making Defendant the "proximate cause" of all of the violations of Plaintiff's copyrights. *Giganews, Inc.*, 847 F.3d at 666. "Indeed, every court to have addressed this issue has found a sufficiently alleged copyright infringement claim based on BitTorrent technology, even when the defendant was merely

9

Renewed Memorandum of Points and Authorities in Support of Plaintiff's Ex Parte Motion for Leave to Serve A Third Party Subpoena Prior to A Rule 26(f) Conference

identified with an IP address." *Patrick Collins, Inc. v. John Doe,* 945 F. Supp. 2d 367, 375 (E.D.N.Y. 2013) (discussing the sufficiency of the complaint under Rule 12(b)(6)).

### 3. *Cobbler Nevada, LLC v. Gonzales* Does Not Raise the Pleading Standard Prior to Identifying the Defendant

The Ninth Circuit recently issued a pair of rulings addressing (1) the pleading standard for a plaintiff in a copyright BitTorrent action and (2) when a prevailing plaintiff is entitled to attorneys' fees in the same type of action. In *Cobbler Nevada, LLC v. Gonzales*, No. CV 17-35041, 2018 WL 4055766, at *3 (9th Cir. Aug. 27, 2018) the Ninth Circuit held that a plaintiff, in a similar action such as here, was required to pay attorneys' fees to the prevailing defendant in the case because the plaintiff did not act objectively reasonable when it pursued an amended complaint against a defendant where "[t]he only connection between [the defendant] and the infringement was that he was the registered internet subscriber and that he was sent infringement notices."[3] *Cobbler Nevada, LLC v. Gonzales*, No. CV 17-35041, 2018 WL 4055766, at *3 (9th Cir. Aug. 27, 2018). Thus, the Court reached this conclusion *after* the district court permitted the plaintiff to subpoena the ISP for defendant's identifying information, conduct an initial investigation into defendant, and even depose defendant. *See id.* Just a few weeks prior to releasing the *Cobbler* decision, the Ninth Circuit ruled in a similar case that "allow[ing] copyright holders to seek limited discovery from an Internet Service Provider to establish a potential infringer's identity[,]" along with permitting a plaintiff to depose the defendant early in the litigation was "practical" and "sensible[.]" *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1036 and 1038 (9th Cir. 2018).

Indeed, in *Cobbler*, the Ninth Circuit recognized that early discovery, such as what Plaintiff took part in here, is "part of the puzzle" in determining the identity of the infringer and thus such early discovery is wholly appropriate. *Cobbler Nevada, LLC v. Gonzales*, No. 17-35041, 2018 WL 4055766 (9th Cir. Aug. 27, 2018). Thus, the District Court in *Cobbler*

---

[3] The Court further noted that Cobbler Nevada had actually "acknowledged that its independent investigation did not permit identification of 'a specific party that is likely to be the infringer.'" *See Id.*

10

Renewed Memorandum of Points and Authorities in Support of Plaintiff's Ex Parte Motion for Leave to Serve A Third Party Subpoena Prior to A Rule 26(f) Conference

**allowed** the subpoena to be issued to the ISP, the ISP to respond and the subscriber to be identified. It was only after the subscriber was identified, and it became clear that neither that information nor any other information linked the defendant in the case to the infringement, that the court found it was improper for the plaintiff to continue to pursue claims against that subscriber. That is the reason the Court in *Cobbler* used the words "standing alone" – it is confirming that a plaintiff in a BitTorrent infringement case such as this gets to *at least* identify the subscriber. If that identity "standing alone" does not support the assertion that the subscriber is the infringer, it may not be proper to proceed with a case – **but the default is that a plaintiff gets to start with that information**. The only way to get that information is through the subpoena sought by this motion.

Importantly, at this stage of the litigation when Plaintiff does not know Defendant's identity or address, it is impossible to plead any set of facts that would specifically connect Defendant to the infringement beyond simply being the subscriber. Without knowing who Defendant is, Plaintiff cannot use its evidence to connect Defendant to the infringement. This is true of nearly every copyright infringement claim based on infringement through the Internet. However, nothing in *Cobbler* nor *Glacier* would indicate the Ninth Circuit sought to prevent copyright holders from enforcing Internet piracy. To the contrary, *Glacier* specifically recognizes that a case such as this one is true to the purpose of the Copyright Act. "Inherent in the Act's purpose is that 'a copyright holder has always had the legal authority to bring a traditional infringement suit against one who wrongfully copies.' In the Internet Age, such suits 'have served as a teaching tool, making clear that much file sharing, if done without permission, is unlawful[,] and apparently have had a real and significant deterrent effect." *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1041 (9th Cir. 2018) (internal citations omitted).

As the Northern District of California held, evaluating the impact of *Cobbler* on the early stage of copyright BitTorrent cases, "[w]hile the Court is cognizant that an IP address is not perfectly correlated to the identity of an alleged infringer because it is possible for a third

11

party to use a wireless network with or without the subscriber's permission, it is at least if not more likely that the subscriber is responsible for the alleged infringement in this case where Plaintiff has isolated 66 separate events where the same IP address was used to infringe its works." *Strike 3 Holdings, LLC v. John Doe Subscriber assigned IP address 67.170.214.219*, No. CV 18-02018-YGR (EDL), *6–7 (N.D. Cal. Sep. 14, 2018) (attached as Exhibit E). Likewise, in this case, Plaintiff has alleged Defendant infringed 46 separate motions pictures spanning over the course of a year. *See* Dkt. 1, Exhibit A.

The Northern District of California court further noted that *Cobbler* acts as a procedural safeguard for Defendant *after Defendant is identified*.

> The information provided by [Defendant's ISP] is likely to identify the alleged infringer or help Plaintiff secure the identity of the alleged infringer by asking for the subscriber's help or conducting its own further investigation of who might be using the IP address to access the BitTorrent protocol. The Ninth Circuit's recent decision in *Cobbler Nevada, LLC v. Gonzalez*, 2018 WL 4055766 (9th Cir. Aug. 27, 2018) ensures that Plaintiff will not be able to rely on a bare allegation that Defendant is the registered subscriber of the IP address associated with infringing activity.

*Strike 3 Holdings, LLC v. John Doe Subscriber assigned IP address 67.170.214.219*, No. CV 18-02018-YGR (EDL), *6–7 (N.D. Cal. Sep. 14, 2018) (Exhibit E).

"To require [Plaintiff] to prove that the subscriber more likely than not is the infringer-that is, to meet its ultimate burden of proof-at the pleading stage would turn the civil litigation process on its head; 'there is no requirement that [Strike 3] present at this stage actual evidence to support the merits of its infringement allegations.'" *Malibu Media, LLC v. Doe*, No. CV 13-365 PWG, 2014 WL 7188822, at *5 (D. Md. Dec. 16, 2014). Accordingly, at this juncture, Plaintiff has made a prima facie case against Doe Defendant and thus demonstrated good cause for leave to take early discovery.

Renewed Memorandum of Points and Authorities in Support of Plaintiff's Ex Parte Motion for Leave to Serve A Third Party Subpoena Prior to A Rule 26(f) Conference

   4. ***There is a Reasonable Likelihood that Plaintiff Can Identify the Defendant and Effectuate Service***

"While not a factor, the *Columbia Ins*. court also requires Plaintiff to demonstrate that the requested discovery will lead to identifying information about Defendants that would make service of process possible." *QOTD Film*, No. CV 2:16-00928-APG-GWF, 2016 WL 8735619 at *2  (citing 185 F.R.D. at 580). Plaintiff's knows that Cox Communications  is the owner of Defendant's IP address because Maxmind's geolocation service has identified Cox Communications  as the owner.  Moreover, the American Registry for Internet Numbers ("ARIN") identifies Cox Communications  as the owner of the IP address.[4]  *See* Stalzer Declaration; *see also BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, No. CV 16-1972, 2018 WL 650316, at *2 (4th Cir. Feb. 1, 2018) (noting "only the ISP can match the IP address to the subscriber's identity"). ARIN is a nonprofit, member-based organization, responsible for the management and distribution of IP addresses across most of North America, including all of the United States.[5]

The subpoena seeks Doe Defendant's name and address, which are currently unknown to Plaintiff.  With Defendant's identity, Plaintiff will be able to amend its complaint to name Doe Defendant and with said name and address, will be able to serve a summons upon Defendant pursuant to Fed. R. Civ. P. 4(a) and (e) (requiring Plaintiff to name the Defendant and effectuate service on that individual).  Without the subpoenaed for information, Plaintiff cannot properly serve Doe Defendant because it does not know his or her identity.

**C. Protective Order**

In BitTorrent cases involving adult content, courts have found it appropriate to issue a protective order establishing procedural safeguards such as allowing a defendant to proceed anonymously.  *See e.g., Strike 3 Holdings*, No. CV 17-2317-JAH (BLM), 2017 WL 6389848 at

---

[4] https://whois.arin.net/
[5] https://www.arin.net/about_us/overview.html

13

*3–4 (S.D. Cal. Dec. 14, 2017). Strike 3 respectfully encourages the Court to establish such procedures here, should the Court find it appropriate.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court grant leave to Plaintiff to issue a Rule 45 subpoena to Defendant's ISP.

Dated this 2nd of October, 2018.

**FOX ROTHSCHILD LLP**

By: /s/ *Kevin M. Sutehall*
KEVIN M. SUTEHALL (9437)
MARK J. CONNOT (10010)

*Attorney for Plaintiff Strike 3 Holdings, LLC*

14

Renewed Memorandum of Points and Authorities in Support of Plaintiff's Ex Parte Motion for Leave to Serve A Third Party Subpoena Prior to A Rule 26(f) Conference